## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LESTER D. WALKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 04-2009-CM** |
| **JO ANNE B. BARNHART,** ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### MEMORANDUM AND ORDER

Plaintiff Lester D. Walker brings this action for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 *et seq*. Plaintiff objects to the Commissioner of Social Security's finding that plaintiff is not disabled. Plaintiff contends that he has established through testimony and credible medical evidence that he is disabled within the meaning of the SSA, and that the Commissioner's decision denying him benefits is not supported by substantial evidence.

**I.  Facts**

Plaintiff filed his application for benefits on January 19, 2000, which was denied initially and on reconsideration. Plaintiff filed a timely request for hearing, and Administrative Law Judge ("ALJ") James S. Stubbs held an evidentiary hearing on April 8, 2002. During the hearing, plaintiff testified that he was born on March 25, 1962, and completed education through the tenth grade. Plaintiff testified that he last worked on December 15, 1995 as a maintenance worker for the Shawnee Mission School District, where his job duties included changing lights, working on the air conditioner and heater, and mowing. Prior to this job, plaintiff also worked as a baker and a construction laborer.

On July 26, 1993, plaintiff broke his back while working for the Shawnee Mission School District. Since breaking his back, plaintiff has had five back surgeries. Plaintiff testified that he suffers from back pain, has nerve damage to his left leg that limits its function, had a pulmonary embolism in February of 2003, and has been treated for depression since 1995 but is currently not being treated for that condition.

Plaintiff testified that he does not sleep well and that his daily activities are limited. Plaintiff described his daily routine as consisting of making meals and doing housework such as dishes, picking up around the house, and laundry. Plaintiff testified that these activities take "segments of time to do" because he can only stand twenty to thirty minutes at a time before he must lie down or sit to alleviate back pain that plaintiff describes as a "driving grinding pain." During the day, plaintiff alleviates his pain by soaking in a tub for fifteen to twenty minutes to help loosen his muscles, raising his feet above his waist in a chair for fifteen to twenty minutes at a time, four times a day, lying down, and sitting in a reclining chair. Plaintiff testified that he can only sit in one position for about thirty to thirty-five minutes.

Plaintiff makes, on average, three trips a week to a small grocery store to pick up a few items weighing no more than six to seven pounds. The whole trip takes about fifteen to twenty minutes. Plaintiff also occasionally takes a twelve to fifteen minute trip a lake near his home where he will spend about fifteen minutes before returning home. Plaintiff testified that he cooks a simple evening meal for himself and his roommate. Plaintiff does not engage in many social activities with other people.

Plaintiff testified that his pain bothers him to the point that it causes memory lapses and keeps him from concentrating enough to read a book.

The ALJ noted that plaintiff has a steady work record through 1995, although plaintiff's earnings were "somewhat sporadic" in the 1990s.

In the Evidence and Rationale section of his decision, the ALJ held that there is a conflict in the record between different treating, examining and reviewing physicians. In support of his finding that plaintiff is not totally disabled, the ALJ discussed and relied upon several opinions. The court will discuss these opinions as they occurred in chronological order.

First, the ALJ relied upon an August 7, 1997 letter written by plaintiff's surgeon, Dr. Dirk H. Alander. Dr. Alander stated that he did not believe plaintiff was capable of anything but sedentary work with sit/stand options of sitting no more than an hour or two at a time, and that plaintiff should avoid bending, twisting, or lifting except for an occasional occurrence. Dr. Alander further advised that plaintiff has reached maximum medical improvement, and plaintiff's last day of treatment should be the same day as the last day of plaintiff's psychological and chronic pain treatment. Dr. Alander also stated that plaintiff "will have permanent restrictions. I do not believe he can do anything but sedentary work with sit/stand options of sitting no more than an hour or two at a time."

Second, the ALJ relied upon plaintiff's August 21, 1997 functional capacity evaluation, which concluded that plaintiff was not able to meet the essential functions of the position of maintenance worker/custodian because he was unable to meet the requirements of static lifting and dynamic lifting, static pushing/pulling, and carrying. The evaluation found that plaintiff is limited in his ability to stoop, and is unable to complete a standing work tolerance, which measures bended reaching and standing/walking. The evaluation also concluded that plaintiff functions at a light physical demand level, meaning that he is able to exert up to twenty pounds occasionally. The evaluator did not test plaintiff's ability to sit for any period of time. The evaluator noted several times that plaintiff gave a good effort in each of the testing areas.

Third, the ALJ relied upon a residual functional capacity assessment for workers' compensation purposes completed by Dr. P. Brent Koprivica on November 22, 1997. As the ALJ noted, this assessment found that plaintiff was restricted to a sedentary physical demand level, and that he should avoid bending, pushing, pulling or twisting, as well as sustained or awkward positions of the lumbar spine. The assessment also restricted plaintiff from squatting, crawling, kneeling or climbing, and found that plaintiff should be allowed to change positions from sitting to standing or walking and vice versa as needed. Dr. Koprivica also recommended limiting any captive activities of sitting, standing or walking to a maximum of one hour intervals. Dr. Koprivica also noted, however, that "it is unlikely that [plaintiff] will ever return back to work. I believe that he has severe restrictions on activities . . . ."

Fourth, the ALJ relied upon a January 3, 1999 treating physician opinion, which restricted plaintiff to a range of sedentary or light work. The ALJ did not, however, cite this opinion and the court was unable to locate it in the voluminous record.

Fifth, the ALJ relied upon a consultative evaluation conducted on March 18, 2000 by Dr. Kamran Riaz. Dr. Riaz stated that plaintiff had mild difficulty getting on and off the examining table, moderate difficulty with heel and toe walking, moderate difficulty squatting and rising from the sitting position, a limited range of motion with right-sided paraspinous muscle spasm, weakness in the lower left extremity without obvious atrophy, and moderate difficulty with orthopedic maneuvers.

Sixth, the ALJ relied upon what he deemed to be a reviewing physician's opinion dated April 14, 2000 and April 17, 2000. However, because of poor copying and illegible handwriting, the court is unable to ascertain who wrote this report. Nonetheless, the report states that plaintiff is capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing or walking for a

-4-

total of at least two hours of an eight-hour workday, sitting with normal breaks for a total of about six hours in an eight-hour work day, and unlimited pushing or pulling. Furthermore, the report states that plaintiff is capable of occasionally climbing, balancing, stooping, kneeling, crouching, and crawling.

Seventh, the ALJ relied upon a November 20, 2000 letter written by Dr. Lowry Jones. As noted by the ALJ, Dr. Jones limited plaintiff to sedentary work between August 1997 and March 1999. Dr. Jones also noted that plaintiff has exhibited no changes in his permanent limitations as discussed by Dr. Alander's March 24, 1999 evaluation. Dr. Jones also stated that plaintiff has "permanent limitations" and "does not appear to have been capable of returning to functional activity."

The ALJ's rationale contrasts the aforementioned opinions with several additional opinions which found, for the most part, that plaintiff is totally disabled.

The ALJ first cited a March 24, 1999 report by Dr. Jones, which states that plaintiff had reported to him that plaintiff was unable to sit for more that fifteen to twenty minutes without severe pain, that plaintiff could not stand more than thirty minutes without severe back pain, and that plaintiff had numbness in his left leg. Dr. Jones's report notes that although plaintiff's quadricep strength is good, plaintiff has quite a bit of calf atrophy as well as quadricep atrophy on his left side. The report also states that plaintiff shows a very restricted range of motion in flexion extension particularly due to pain, and that he has depressed reflexes at the left ankle and somewhat at the left knee. In addition, Dr. Jones stated:

> Mr. Walker has undergone multiple back operations, the last being an instrumented lumbar fusion. He has very poor functional activity particularly of strength, the ability to sit, stand or walk any length of time. He is unable to lift or do any physical labor. In addition he has become extremely depressed and suicidal at times according to his history. I think this combination suggests that this patient is not able to perform in a regular work force and should be considered disabled from the standpoint of his injury and the associated mental disease which he has exhibited.

-5-

The ALJ also cited a letter dated May 18, 1999, in which Dr. Jones stated:

> I do not believe that Mr. Walker during this time has been capable of returning to his job as a custodian, nor do I believe that he has the education, training and/or experience to return to other jobs of a more sedentary nature. Mr. Walker is not physically capable of doing any lifting, nor is he capable of standing for a prolonged period of time. He also is not at this point mentally capable and stable enough to handle a full time occupation in my opinion.

Finally, the ALJ cited to and plaintiff relied heavily upon a June 1, 2001 report by examining neurologist Dr. Daniel D. Zimmerman. It was Dr. Zimmerman's opinion that Mr. Walker is completely disabled by meeting the social security listing 1.05C, 1 and 2 of Appendix 1, Subpart P of part 404. However, as noted by the ALJ, the social security listing cited by Dr. Zimmerman is an old listing.[1]

During the hearing, the ALJ also elicited the testimony of vocational expert George R. McClellan. Mr. McClellan testified that plaintiff previously performed work as a school custodian, a baker, and a construction laborer, all of which are categorized as heavy, semiskilled jobs. In his first hypothetical, the ALJ asked Mr. McClellan to assume an individual with the same age, education and work experience as the plaintiff in this case, and to further assume that this individual (1) can stand and walk for only fifteen minutes at a time for a total of two hours in an eight-hour work day; (2) can sit with the opportunity to change positions at will for up to six hours in an eight-hour work day; (3) is restricted from bending or twisting; (4) can only occasionally balance, stoop, kneel, crouch, crawl or climb stairs; (5) has mental

---

[1] Upon being appraised of the 2002 revised change of the applicable listing for disorders of the spine, Dr. Zimmerman rendered a report dated August 26, 2003 (approximately one year after the ALJ issued his opinion) which states that if the new listing—1.04A of Appendix 1, Subpart P of part 404—were to be considered, his previous finding that plaintiff is disabled is applicable to the new listing because plaintiff has "pain, significant lumbar limitations in range of motion, and an appropriate radicular distribution of significant motor loss with muscle weakness, sensory loss and reflex loss in the lower extremities."

limitations; and (6) in accordance with the mental residual functional capacity assessment form, is moderately limited as to paragraphs three and five.  Mr. McClellan testified that a person with these limitations could not perform any of the past work of plaintiff.

The ALJ next asked Mr. McClellan if there were any transferable skills from plaintiff's past work to any job that would accommodate this individual's residual capacity function.  Mr. McClellan testified that there were not, but that there were other jobs in the national economy that an individual with these limitations could perform, such as a production line inspector (2,500 jobs in the state of Kansas and 90,000 nationally), production line assembler (2,000 jobs in the state of Kansas and 40,000 nationally), or a clerical sorter (2,000 jobs in the state of Kansas and 100,000 nationally).

For the second hypothetical, the ALJ asked Mr. McClellan to assume an individual with the same age, education, and work experience as plaintiff, and to assume that this individual has the same limitations expressed in the first hypothetical, with the further assumption that while seated, the individual needs to prop up his legs to waist height while seated.  Mr. McClellan testified that this additional limitation would eliminate the possibility of work.

For the third hypothetical, the ALJ asked Mr. McClellan to assume all of the limitations expressed in the first hypothetical, with the additional assumption that the individual requires an accommodation to have a reclining rest for at least one hour during the workday.  Mr. McClellan testified that this additional limitation would also not allow for work.

Plaintiff's brief also notes the following additional medical background not specifically discussed by the ALJ.  Plaintiff spent approximately six weeks as an admitted patient of the Behavioral Pain Management Program of Research Medical Center in Kansas City, Missouri from June 15, 1997 to July 3, 1997.

Plaintiff was discharged with a diagnosis of chronic low back pain and a secondary diagnosis of lumbar radiculopathy and depression.  The discharge summary indicated that following the program, plaintiff had increased his accuracy in body mechanics and ability to adopt an eighty percent technique in doing household tasks, that he was able to use relaxation techniques to manage his pain, and that he had made improvements in strength and endurance to the point of riding a stationary bicycle for ten minutes.  It was also reported that plaintiff attended and participated well in all aspects of the pain management program except for three days due to stress.

Plaintiff participated in physical therapy from October 26, 1996 to March 20, 1997.  At the beginning of this therapy, plaintiff was instructed on the proper technique for spine stretching and strengthening exercises, and he was able to sit for only twenty to thirty minutes before developing right lower extremity parenthesias.  Although plaintiff continued to complain of right lower back pain throughout physical therapy, the therapist noted that "[t]he patient works hard during therapy sessions and appears compliant with his home exercise program."

Plaintiff was admitted to Olathe Medical Center from February 8, 2001 to February 23, 2001 for treatment of a large right-sided pulmonary embolism with respiratory failure.  Plaintiff previously had pulmonary embolism a year-and-a-half prior to the February 2001 hospitalization, and was treated at Bethany Medical Center.  In a letter dated March 13, 2003, plaintiff's treating physician, Dr. Michael Greenfield, indicated that the appropriate treatment for plaintiff's deep venous thrombosis and pulmonary embolism is for plaintiff to wear compression hose, as well as occasionally elevate his legs if the compression hose does not provide adequate decompression.

Plaintiff has been hospitalized on several occasions after attempting suicide, although he is not currently receiving any treatment for depression.

On August 29, 2002, the ALJ found that plaintiff was not under a "disability" as defined in the SSA. The ALJ made the following findings:

1. Claimant met the special earnings requirement of the Act on December 15, 1995, the date claimant stated he became unable to work, but continued to do so only through December 31, 2000.

2. Claimant has not engaged in substantial gainful activity at any time since December 15, 1995 and reported numbers in 1996 were paid out of sick leave.

3. The medical evidence establishes that claimant has a low back disorder, status post multiple surgical procedures with residual failed back syndrome; a history of deep venous thrombosis with pulmonary embolisms; and depression, but he does not have an impairment or combination of impairments listed in, or medically equaled to one listed in Appendix 1, Subpart P, Regulation[] No. 4.

4. Claimant's testimony as to the severity of his impairments and attending symptoms is found to be no more than partially credible for the reasons specifically set forth in the Rationale section of this decision.

5. Claimant has at all times retained a residual functional capacity for no more than limited sedentary work where he can lift and carry 20 pounds maximum occasionally with 10 pounds frequently, stand and walk for no more than 1 hour at a time for a total of 2 of 8 hours, sit with a change of position for 6 to 8 hours, cannot bend or twist and can only occasionally balance, stoop, kneel, crouch, crawl and climb stairs. Mentally he has moderate dysfunction in terms of his ability to understand and remember as well as carry out detailed instructions.

6. Claimant is incapable of performing any of his past relevant work and although semiskilled such skills do not transfer to jobs within his residual functional capacity.

7. Claimant is currently 40 years of age and has at all times been a younger individual.

8. Claimant has a 10th grade education and is literate.

9. Based on an exertional capacity for a range of sedentary work and claimant's age, education and work experience, the framework of Rule 201.26, Table No. 1, Appendix 2, Subpart P, Regulation[] No. 4 indicates that a conclusion of not disabled is appropriate.

10. Although claimant does have non-exertional pain and some mental dysfunction as described above, using the above cited rule as a framework for decision making, there [is] a significant number of jobs in the economy which he can nonetheless perform, the numbers and identities if which were specifically set forth by the vocational expert at the time of claimant's hearing.

11. Claimant has not been under a "disability" as defined in the Social Security Act, as amended, at anytime through the date of this decision.

Plaintiff filed a timely request with the Appeals Council to review the decision of the ALJ. On November 13, 2003, the Appeals Council denied plaintiff's request for review; thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the correct legal standards were applied and whether the record as a whole contains substantial evidence to support the Commissioner's decision. *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003). The Supreme Court has held that "'substantial evidence'" is "'more than a mere scintilla'" and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). Nor will the findings be affirmed by isolating facts

and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Commissioner's failure to apply the proper legal standards may be sufficient grounds for reversal independent of the substantial evidence analysis. *Id.* The court thus reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992).

Plaintiff bears the burden of proving disability under the SSA. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The SSA defines "disability" as the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. *See* 42 U.S.C. § 423(d)(1)(A). To determine disability, the Commissioner uses a five-step sequential evaluation. The Commissioner determines: (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the claimant has a severe impairment, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See* 20 C.F.R. §§ 404.1520, 416.920. If a claimant satisfies steps one, two and three, he will

automatically be found disabled.  If a claimant satisfies steps one and two, but not three, he must satisfy step four.  If step four is satisfied, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

### III.     Discussion

In this case, the ALJ denied plaintiff benefits at step five, relying on the testimony of vocational expert Mr. McClellan in finding that plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, such as a production line inspector, production line assembler, and clerical sorter.  In making this determination, the ALJ found that plaintiff's allegations regarding his limitations were not totally credible and that he had the residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for no more than one hour at a time for a total of two hours in an eight-hour day; and sit with a change of position for six hours in an eight-hour day.

Plaintiff alleges that the ALJ did not conduct a proper evaluation of the credibility of plaintiff's subjective pain complaints or the credibility of plaintiff's supportive medical evidence, which plaintiff argues demonstrates that he must sit with his legs elevated to waist level several times a day to relieve his back pain.[2]  Plaintiff contends that he has established, through testimony and credible medical evidence, that his

---

[2] The record also indicates that Dr. Greenfield indicated that the appropriate treatment for plaintiff's deep venous thrombosis and pulmonary embolism was to wear compression hose, as well as occasionally elevate his legs if the compression hose do not provide adequate decompression.  However, plaintiff's argument regarding his need to elevate his legs centered only on his back pain; plaintiff did not argue that he must elevate his legs to treat his deep venous thrombosis and pulmonary embolism condition.

impairments render him disabled and unable to engage in gainful employment. Thus, plaintiff claims that the ALJ's decision is not supported by substantial evidence in the record and should be reversed.

The Commissioner contends that the ALJ properly evaluated plaintiff's credibility and properly determined that plaintiff could perform other jobs in the national economy. In support of his findings, the ALJ found that "there is a conflict in the record between a number of different treating, examining and reviewing sources," and that "claimant's treating physician's opinions are most persuasive." Furthermore, the ALJ found that "[c]laimant's testimony as to the severity of his impairments and attending symptoms is found to be no more than partially credible for the reasons set forth in the Rational section of this opinion." The issue before this court is whether the ALJ's decision is supported by substantial evidence in the record.

## A.   Treating Physicians' Opinions

Plaintiff argues that his treating physicians are in the best position to opine as to the credibility of plaintiff's pain complaints, and specifically whether plaintiff be given unlimited sit/stand options. The ALJ's opinion placed substantial weight on plaintiff's treating physician's (singular) opinions, finding them to be "most persuasive." At issue here, therefore, is plaintiff's treating physicians' opinions about plaintiff's specific limitations.

A treating physician's opinion is entitled to great weight because it "reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996); *see also Velasquez v. Apfel*, 28 F. Supp. 2d 1285, 1287 (D. Colo. 1998) (holding that because the treating physician had followed claimant for many years, he was in a superior position to evaluate the claimant's restrictions, and accordingly his opinion should have been afforded special weight). The law of the Tenth Circuit requires that the treating physician's opinion be given

substantial weight unless good cause is shown to disregard it. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). Treating physicians' "opinions are binding upon the ALJ 'unless they are contradicted by substantial weight to the contrary.'" *Hintz v. Chater*, 913 F. Supp. 1486, 1492 (D. Kan. 1996) (quoting *Claassen v. Heckler*, 600 F. Supp. 1507, 1512 (D. Kan. 1985)).

The Tenth Circuit requires the ALJ to consider the following: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which the opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict that opinion. *Goatcher*, 52 F.3d at 290 (citing 20 C.F.R. § 404.1527). When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's reports. *Goatcher*, 52 F.3d at 289-90.

According to the court's best estimation, plaintiff's treating physicians are Dr. Jones and Dr. Alander.[3] In general, Dr. Jones found that plaintiff was not capable of returning to the work force, and Dr.

---

[3] Neither plaintiff nor the ALJ articulated exactly which physician(s) it characterized as plaintiff's treating physician(s). Plaintiff's brief, however, states that Dr. Alander and Dr. Jones are both plaintiff's treating physicians, and the Commissioner adopted plaintiff's statement of facts. Moreover, the ALJ mentioned treating physicians twice: once when citing a May 18, 1999 letter, written by Dr. Jones, and once when citing a January 3, 1999 letter, which the court has been unable to locate in the record. Therefore, although the court is not certain which physician or physicians the ALJ considered to be plaintiff's treating physician(s), the court concludes that for the purposes of this opinion, Dr. Alander and Dr. Jones are plaintiff's treating physicians.

Alander opined that plaintiff has reached his maximum physical improvement, and that he did not believe plaintiff was capable of anything but sedentary work with sit/stand options of sitting no more than an hour or two at a time. The court notes, therefore, that the treating physicians' opinions conflict regarding plaintiff's ability to work; Dr. Jones opines that plaintiff is incapable of gainful employment, while Dr. Alander merely limited plaintiff's functional abilities in performing gainful employment. Moreover, there seems to be a conflict, albeit a slight one, on the treating physicians' opinions with regard to plaintiff's need for unlimited sit/stand options. Dr. Alander found that plaintiff required sit/stand options of sitting no more than an hour or two at a time, while Dr. Jones stated that plaintiff "has very poor functional activity particularly of strength, the ability to sit, stand or walk any length of time."

Therefore, the court remands the case back to the ALJ. Upon remand, the ALJ should discuss exactly which treating physician's opinion he relied upon. In addition, the ALJ should either accord substantial weight to each treating physician's opinion regarding plaintiff's request for unlimited sit/stand options, or give specific, legitimate reasons for disregarding it.

**B.     Plaintiff's Credibility Regarding His Subjective Claims of Pain**

Plaintiff also argues that the ALJ erred in finding that plaintiff's subjective testimony regarding the severity of his pain is "no more than partially credible." Plaintiff specifically argues that the record substantiates plaintiff's efforts to avail himself of his pain by using a number of treatment options, and that these steps demonstrate that plaintiff's testimony is credible. Therefore, plaintiff argues, plaintiff's testimony that he must elevate his legs to waist level while seated several times a day should be accepted as credible.

The court notes that whether plaintiff must elevate his legs is pivotal to his disability status. If the ALJ finds that plaintiff must elevate his legs several times a day, the ALJ must then conclude that plaintiff is

disabled based on the testimony of vocational expert Mr. McClellan, who stated that an individual with plaintiff's age, education, and work experience who must elevate legs to waist height while seated would have no possibility of finding work in the national economy. The Commissioner argues that the ALJ discredited plaintiff's subjective complaints by noting inconsistencies with plaintiff's complaints and his work history, daily activities and lack of side effects from medication.

"'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The court therefore examines whether there exists substantial evidence in the record to support the ALJ's credibility determination. Great deference should be given to the ALJ's conclusion as to credibility. *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987).

The Tenth Circuit has outlined numerous factors decision-makers may consider when determining the credibility of subjective complaints of pain, including "a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems," as well as "the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987) (citations omitted). Moreover, a decision-maker may also consider the motivation of and relationship between the claimant and other witnesses, as well as the consistency or compatibility of nonmedical testimony with objective medical evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

The Commissioner argues that the ALJ discussed three inconsistencies in support of his determination that plaintiff's subjective pain testimony was "no more than partially credible." First, the ALJ found that plaintiff's daily activities are inconsistent with his subjective complaints of pain. The court notes, however, that plaintiff's testimony indicates that his daily activities are quite limited; plaintiff testified that he does household chores such as cooking meals, washing dishes and washing laundry, but that he modifies these activities to accommodate his limitations and does them in small segments of time to enable himself to sit, lie down or elevate his legs in the interim. Second, the ALJ noted that plaintiff did not suffer any adverse side effects from medication. Third, the ALJ stated that plaintiff had a steady work history through 1995, but that his wages in the 1990s were "somewhat sporadic."

The court finds that several factors not discussed by the ALJ weigh heavily in support of plaintiff's credibility. First, the court finds significant plaintiff's efforts to seek relief from his pain, namely undergoing at least one elective back surgery, participating in physical therapy, and participating in in-patient pain management treatment. Notably, the ALJ did not mention these efforts in his analysis. Second, although plaintiff makes no issue of disability with respect to his depression, the court finds that plaintiff's suicide attempts, which required several hospitalizations, lend credibility to plaintiff's subjective testimony of his pain. The ALJ noted plaintiff's history of depression, but did not discuss his opinion as to its effect, if any, on plaintiff's credibility. Third, the record contains some objective medical evidence that suggests that plaintiff experiences significant pain. For instance, Dr. Zimmerman noted that when plaintiff was asked to assume a recumbent position, he first rolled onto his right side and then very carefully rolled onto his back and then extended his lower extremities. In Dr. Zimmerman's opinion, "such efforts to minimize pain with recumbency was consistent with a radicular component to pain complaints."

Whether plaintiff's subjective complaints are deemed credible, and thus whether plaintiff must elevate his legs to waist level several times a day to relieve his pain, is the crux of the issue before the court. The court acknowledges that there are factors on the record weighing against plaintiff's credibility. However, the court hesitates to conclude that *substantial* evidence weighs against finding plaintiff credible. *See McGoffin*, 288 F.3d at 1254. Thus, the court remands this determination back to the ALJ. Upon remand, the ALJ should give specific, factual findings regarding the credibility factors set out by the court that weigh in favor of plaintiff's credibility. Furthermore, the ALJ should either accord substantial weight to those factors that weigh in favor of plaintiff's credibility, or give specific, legitimate reasons for limiting plaintiff's credibility irrespective of those factors.

**C.      The Opinion of Plaintiff's Examining Physician, Dr. Zimmerman**

Finally, plaintiff argues that the ALJ should have given more weight to the testimony of plaintiff's examining physician, Dr. Zimmerman. The ALJ stated that Dr. Zimmerman's June 1, 2001 report, which opines that plaintiff is totally disabled, uses an old listing for defining disability. The ALJ went on to note that "Nonetheless, the doctor's conclusion is not supported by the bulk of the medical evidence in the file."

The court agrees with plaintiff's argument that the ALJ should have more fully discussed why Dr. Zimmerman's report was not given more credibility. However, Dr. Zimmerman was retained to evaluate plaintiff's alleged disability; he is not plaintiff's treating physician. As previously discussed, treating physicians' opinions are to be given more weight than evaluating or reviewing physicians. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (holding that non-treating physician's opinions are of suspect reliability). In addition, Dr. Zimmerman's opinion that plaintiff meets the criteria for the listing of impairments is a legal conclusion that has no legal significance because legal conclusions are "'reserved to

-18-

the Commissioner.'" *Cainglit v. Barnhart*, 85 Fed. Appx. 71, 76 (10th Cir. 2003) (quoting 20 C.F.R. §§404.1527(e)(1); 416.927(e)(1)).  Finally, Dr. Zimmerman did use an outdated listing of impairments, and although he later amended his findings to conform to the new listing's requirements for disability, the court notes that this amendment was completed on August 26, 2003, nearly a year after the ALJ issued his decision.  For these reasons, the court upholds the ALJ's decision to give less weight to Dr. Zimmerman's opinions than to the opinions of plaintiff's treating physicians.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is reversed and remanded pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

Dated this 7th day of September 2005, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**